Robert C. Faber (RF 7020)
Peter S. Sloane (PS 7204)
OSTROLENK, FABER, GERB & SOFFEN, LLP
1180 Avenue of the Americas
New York, New York 10036
Telephone: (212) 382-0700
Facsimile: (212) 382-0888
rfaber@ostrolenk.com
psloane@ostrolenk.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| INTERSEARCH GROUP, INC. <br><br> Plaintiff, <br><br> v. <br><br> INTERSEARCH WORLDWIDE LIMITED, and COOK ASSOCIATES, <br><br> Defendants, | Civil Action No.: 07 CV 3545 <br> (DAB)(KNF) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION**
**TO DISMISS, OR IN THE ALTERNATIVE, TO**
**TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA**

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................ 1

II.   STATEMENT OF FACTS ............................................. 2

     Plaintiff InterSearch Group, Inc. ............................................ 2

     Third Party Conex Inc. ..................................................... 3

     Defendant Intersearch Worldwide Limited ................................... 5

     Defendant Cook Associates, Inc. ............................................ 7

III.  ARGUMENT .......................................................... 8

    I.    DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED
         BECAUSE THEY ARE SUBJECT TO PERSONAL JURISDICTION
         IN NEW YORK ................................................... 8

        A.    Defendants Transact Business in New York Pursuant to
             N.Y. C.P.L.R. Section 302(a)(1) ................................. 8

        B.    Defendants Have Committed A Tortious Act within New York
             as Defined by N.Y. C.P.L.R. 302(a)(2) .......................... 11

        C.    If the Court Declines to Exercise Personal Jurisdiction on
             the Above Facts, It Should Grant Discovery on the Issue
             of Personal Jurisdiction ....................................... 13

    II.   DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED
         BECAUSE PLAINTIFF'S COMPLAINT DOES NOT FALL WITHIN
         EITHER NOMINATED EXCEPTION TO THE FIRST-TO-FILE RULE ..... 14

        A.    Plaintiff's Complaint Does Not Fall Within The Anticipatory
             Filing Exception to the First-to-File Rule ....................... 15

        B.    Plaintiff's Complaint Does Not Fall Within The Customer
             Suit Exception to the First-to-File Rule ......................... 17

III.    TRANSFER TO DEFENDANTS' CHOSEN FORUM IS BOTH
        INAPPROPRIATE AND UNAVAILABLE DUE TO DEFENDANTS'
        FAILURE TO COMPLY WITH THE ESTABLISHED PROCEDURES
        FOR SEEKING TRANSFER .................................... 20

IV.    CONCLUSION ...................................................... 22

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*1-800-Flowers Inc. v. Intercontinental Florist*, 860 F. Supp. 128 (S.D.N.Y. 1994) .................. 14

*Aerotel, Ltd v. Sprint Corp.*, 100 F. Supp. 2d 189 (S.D.N.Y. 2000) .......................................... 18

*Albert Furst Von Thurn Und Taxis v. Karl Prince Von Thurn Und Taxis*,
    2006 U.S. Dist. LEXIS 56703 (S.D.N.Y. 2006) (DAB)..............................................8, 14

*Am. Eagle Outfitters, Inc. v. Retail Royalty Co.*, 457 F. Supp. 2d 474 (S.D.N.Y. 2006)....... 20, 21

*Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79 (2d Cir. 2006) .................................... 11

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549 (S.D.N.Y. 2000)..................................9,10

*City of New York v. Exxon Corp.*, 932 F.2d 1020 (2d Cir. 1991) ............................................... 14

*Coast to Coast Fabrics, Inc. v. Exact Change Only Corp.*,
    2006 U.S. Dist. LEXIS 14950 (S.D.N.Y. 2006) (DAB).....................................................21

*Dluhos v. The Floating and Abandoned Vessel*, 162 F. 3d 63 (2d Cir. 1998).............................11

*Firma Melodiya v. ZYX Music GMBH*, 1995 U.S. Dist. LEXIS 795 (S.D.N.Y.1995)........9, 10, 13

*Foot Locker Retail, Inc. v. SBH, Inc.*,
    2005 U.S. Dist. LEXIS 599 (S.D.N.Y. 2005) (DAB)........................................................12

*Fort Knox Music v. Baptiste*, 139 F. Supp. 2d 505(S.D.N.Y.2001)..............................................16

*Gianni Sport Ltd. v. Metallica*, 00 Civ. 0977 (MBM) 2000 U.S. Dist. LEXIS 17339
    (S.D.N.Y. December 4, 2000)..........................................................................................15

*Hubbell Inc. v. Pass & Seymour*, 883 F. Supp. 955 (S.D.N.Y.1995)........................................8, 12

*Jazini v. Nissan Motor Co., Ltd.,* 148 F.3d 181 (2d Cir. 1998)...............................................10, 11

*Magnetic Audiotape*, 334 F.3d 204 (2d Ciiiir. 2003)...................................................................13

*Marine Midland Bank v. Miller*, 664 F.2d 899 (2d Cir. 1981) ..................................... 13

*NSI Corp. v. Showco, Inc.*, 843 F. Supp. 642 (D. Or. 1994) ........................................ 19

*Panavision Intern, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998)................................................14

*PDK Labs v. Friedlander*, 103 F.3d 1105 (2d Cir. 1997)............................................................8, 9

*Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17 (2d. Cir. 2004)........................................10

*Supreme International Corp. v. Anheuser-Busch, Inc.*, 972 F. Supp 604 (S.D. Fla, 1997) ........ 15

*Woodke v. Dahm*, 70 F.3d 983 (8th Cir. 1995) ........................................................ 15

## STATUTES

15 U.S.C § 1060(4).........................................................................................................4

28 U.S.C. §1404(a) ..................................................................................................... 20

N.Y. C.P.L.R. § 302(a)(1) ........................................................................................... 8

## INTRODUCTION

Defendants Intersearch Worldwide Limited ("Worldwide") and Cook Associates, Inc. ("Cook") have moved to dismiss this action or, alternatively, to transfer it to their preferred forum of the Northern District of California. Worldwide and Cook (collectively "Defendants") set forth a fourfold argument why this first-filed action should be dismissed in favor of the later-filed action brought by Worldwide in California. Defendants assert that: (1) the Court lacks personal jurisdiction over them, (2) the initial and amended Complaint are impermissible forum shopping, (3) there is no nexus between this action and New York, and (4) California is a more appropriate forum. Defendants' Memorandum in Support of their Motion to Dismiss, or in the Alternative, to Transfer to the Northern District of California (hereinafter the "Memo") at p. 1. None of these arguments has merit and the Court should dismiss the motion in its entirety.

This Court has jurisdiction over all the parties and the nexus to New York is undeniable. Plaintiff has an office on Wall Street in Manhattan in this District. O'Donnell Decl. ¶ 6. Defendant Cook, the exclusive U.S. licensee of Defendant Worldwide, has as an office on Lexington Avenue in Manhattan in this District. Sloane Decl. ¶ 19, Ex. I at ¶ 7. Indeed, the Cook officer principally responsible for the business associated with the mark INTERSEARCH, the mark in dispute in this trademark infringement action, is based in New York. Sloane Decl. ¶ 17. Worldwide even admits that its licensee Cook is subject to jurisdiction here. Memo at p. 3. Worldwide must also therefore concede that it transacts business in New York with and through its licensee Cook.

Furthermore, Conex, the former licensee of Worldwide for the mark INTERSEARCH, was, and still is, based in New York. Slaone Decl ¶ 4. Conex will no doubt testify as a witness regarding its exclusive ownership and United States registration of the mark INTERSEARCH, and Conex' transfer of the registrations and ownership to Plaintiff in a bona

fide transaction.    Sloane Decl. ¶ 4. Thus, despite Defendants' many and varied misrepresentations to the contrary, this Court unquestionably possesses jurisdiction over all parties and the nexus for Plaintiff's causes of action is clear.

After disposing of the jurisdictional/nexus issues, this Court should apply the long-established, first to file rule of this Court and this District and find that transfer of this action to California is inappropriate. Contrary to Defendants' representations, the Second Circuit maintains "a strong presumption" in favor of maintaining first-filed declaratory judgment actions over actions later-filed elsewhere. Worldwide tries to negate this well-established rule, arguing that Plaintiff's filing falls under both the "anticipatory filing" and "customer suit" exceptions. As is set forth below, both of Defendants' arguments are inapplicable because New York is not Plaintiff's home forum. Defendants' remaining request to transfer this action to California is similarly deficient because New York is a convenient, if not the most convenient, forum for all concerned. The only real attempt at forum-shopping by a party to this action is Defendants' motion to transfer away from the present most convenient forum.

## STATEMENT OF FACTS

Below is a brief recitation of the facts, with corresponding record citations, necessary to adjudicate the present motion – including those critical facts omitted by Defendants in their memorandum supporting their motion.

### Plaintiff InterSearch Group, Inc.

Plaintiff Intersearch Group, Inc., ("Plaintiff" or "Intersearch") is a U.S.-based company that provides leading Internet search services through a combination of traffic aggregation and proprietary web sites. O'Donnell Decl. ¶ 3. The company operates in the

fastest growing segments of Internet commerce, including paid search and direct navigation driving high quality traffic to advertisers and providing users with quick access to pertinent products and services. Id. Plaintiff maintains an Internet web site at www.intersearch.com, where it promotes and advertises its search services. Id.

Through its InterSearch Corporate Services division, Plaintiff also provides professional and technical consulting to large corporations, predominantly in the financial services market. O'Donnell Decl. ¶ 4. Plaintiff helps its clients achieve higher efficiency and performance, as well as lower operating costs, by ensuring that they have the proper employees, technologies and processes. Id. Among other things, the company provides rigorous employment screening searches for its clients. Id. Candidates selected by Plaintiff are of high caliber with specialized backgrounds and confirmed credentials. Id. Plaintiff actively promotes its employment-related services performed by its Corporate Services business through its Internet web site located at www.corp.intersearch.com. Id.

Plaintiff has numerous connections with New York. Although it is headquartered in San Francisco, Plaintiff's have a second office located in New York. O'Donnell Decl. ¶ 5. The San Francisco and New York are the only two locations where Plaintiff has offices. Id. Plaintiff's New York office, located at 14 Wall Street in Manhattan, is prominently displayed on its web site. O'Donnell Decl. ¶ 6. The New York is a critical market for Plaintiff as a company that assists clients in the financial services industry. O'Donnell Decl. ¶ 7. Plaintiff also services numerous prestigious clients located in New York, including HSBC, Merrill Lynch and Merrill Lynch. O'Donnell Decl. ¶ 8.


**Third-party Conex Incorporated.**

Plaintiff operated under the name and mark INTERSEARCH without incident for

many years. O'Donnell Decl. ¶ 10.  In a March of 2005, however, Plaintiff received a cease and

desist letter sent by a Manhattan-based company named Conex Incorporated ("Conex"), through

its New York attorneys at the law firm of Reiss, Eisenpress & Eisenberg. Id. Conex alleged that

Plaintiff infringed Conex' trademark rights in U.S. Registration Nos. 1,125,849, 2,531,787 and

2,346,993 of the mark INTERSEARCH for executive search and human resource services

(hereinafter collectively referred to as the "Registrations"). Id.

Following receipt of the cease and desist letter, Plaintiff and Conex discussed,

their dispute. O'Donnell Decl. ¶ 11.   After brief negotiations, Plaintiff purchased Conex' rights

to the mark INTERSEARCH and Conex' three United States registrations of that mark.  Id.

To that end, Conex and Plaintiff executed a Settlement Agreement in August of

2005 (the "Agreement"). O'Donnell Decl. ¶ 12.  Under the Agreement, Conex warranted that it

is the sole owner of all right, title and interest in the mark INTERSEARCH in the Registrations.

O'Donnell Decl. ¶ 13.  As part of its due diligence in obtaining assignment of the Registrations,

Plaintiff checked the assignment records of the United States Patent and Trademark Office and

did not find any assignment or other document disputing Conex' representations or otherwise

affecting title to the Registrations that Plaintiff had acquired.  Sloane Decl. ¶ 5.  Pursuant to

Section 10 of the Lanham Trademark Act, 15 U.S.C § 1060(4), any unrecorded documents

purporting to affect title to those registrations would be void against Plaintiff, a bona fide

purchaser in good faith.

Plaintiff promptly recorded the assignment of the three United States trademark

registrations from Conex in the Assignment Branch of the U.S. Patent and Trademark Office (the

"U.S.P.T.O.), at Reel 3222 and Frame 0696, on September 12, 2005.  O'Donnell Decl. ¶ 15.

Thereafter, Plaintiff continued in good faith to use the name and mark INTERSEARCH for

providing professional consultation, staff augmentation, and training services. O'Donnell Decl.

¶¶ 16 and 18.

Over the years, Plaintiff, using the name and mark INTERSEARCH, has achieved great success.  O'Donnell Decl. ¶ 16.  In 2006, Plaintiff had revenue exceeding $25 million for performance of services under the registered mark INTERSEARCH.  Id.  Plaintiff is now a publicly traded company with its shares listed on the New York-based American Stock Exchange under the ticker symbol IGO.  O'Donnell Decl. ¶ 17.

**Defendant Intersearch Worldwide Limited**

Worldwide is a United Kingdom-based entity that provides links on the Internet to the web sites of executive search and human resource consulting firms that are located in various countries around the world.  Memo at p. 5.  Worldwide provides its Internet linking services through the web site at www.intersearch.org.  Sloane Decl. ¶ 19, Ex. I ¶45.  Additionally, Worldwide had a prior business relationship with Conex in the U.S., purportedly concerning the mark INTERSEARCH, which Plaintiff has been informed and believes terminated some time prior to the commencement of the business negotiations between Plaintiff and Conex in 2005. Memo at p. 4.

Despite having no continuing relationship with Conex, on December 19, 2006, Worldwide sent a cease and desist letter to Plaintiff demanding, *inter alia,* that Plaintiff cease using Plaintiff's name and mark INTERSEARCH for employment related services.  O'Donnell Decl. ¶ 19.  Worldwide's letter purported to restate a prior business agreement between Conex and Worldwide, which did not affect an assignment of trademark rights, into an assignment to Worldwide of Conex' trademark rights in the Registrations.  O'Donnell Decl. ¶ I.  No such assignment exists in any form, neither express nor implied, in any documents ever shown to Plaintiff.  Sloane Decl. ¶ 5. Worldwide continues to insist that Plaintiff assign Plaintiff's

Registrations and discontinue using and registering Plaintiff's name and mark INTERSEARCH for personnel, placement, recruitment and the other services. Sloane Decl. ¶ 19, Ex. I ¶ 52.

Counsel for Worldwide and Plaintiff subsequently exchanged letters to explain their respective clients' positions regarding rights to Plaintiff's mark INTERSEARCH for employment related services in the U.S. O'Donnell Decl. ¶¶ 20-23.

On January 23, 2007, Worldwide initiated the first steps toward litigation by filing a Request for an Extension of Time to File a Notice of Opposition against a new application to register the mark INTERSEARCH (the "Application") filed by Plaintiff in the U.S.P.T.O. O'Donnell Decl. ¶ 21.

On May 3, 2007, because Worldwide was continuing to assert its trademark rights, and with the dispute still unresolved, Plaintiff filed the instant action seeking judicial assistance in declaring the rights of the respective parties to the mark INTERSEARCH (hereinafter referred to as the "New York Action"). O'Donnell Decl. ¶ 24; Sloane Decl. ¶ 6. Plaintiff refrained from serving the Complaint in the New York Action while the parties continued to discuss settlement. O'Donnell Decl. ¶ 27.

On June 26, 2007, the attorneys for Worldwide sent a letter to the attorneys for Plaintiff advising that Worldwide had become aware of the New York Action. Sloane Decl. ¶ 7. The attorneys for Worldwide further advised Plaintiff that Worldwide had filed a Notice of Opposition against Plaintiff's Application with the Trademark Trial and Appeal Board of the U.S.P.T.O. Sloane Decl. ¶ 8.

On June 29, 2007, with the dispute still not settled, and concerned about the 120-day date to serve process in the New York Action approaching, the attorneys for Plaintiff asked the attorneys for Worldwide to accept service of the Summons and Complaint in the New York Action on behalf of Worldwide. Sloane Decl. ¶ 9. By letter dated July 10, 2007, the attorneys for

Worldwide refused to do so.  Id.

Plaintiff subsequently served process under the Hague Convention. Sloane Decl. ¶ 11. Worldwide does not dispute the adequacy or sufficiency of service of process.  Sloane Decl. ¶ 12.

On September 6, 2007, without prior notice to Plaintiff, four months after the New York Action was filed and over two months after Worldwide was aware of the New York Action, Worldwide filed an action in the Northern District of California alleging claims of unfair competition, common law unfair competition, intentional interference with contract, intentional interference with prospective economic advantage, unfair competition under California law, declaratory judgment and cancellation (hereinafter referred to as the "California Action"). Sloane Decl. ¶ 13.  Worldwide served the Complaint in the California Action by hand upon Plaintiff on September 7, 2007.  Id.

**Defendant Cook Associates, Inc.**

The filing of the California Action made it apparent to Plaintiff that Worldwide had no intention of amicably settling the instant dispute.  O'Donnell Decl. ¶ 29.  It also made it clear that Worldwide uses the mark INTERSEARCH in the U.S. through a new licensee, intended to replace Conex, named Cook Associates, Inc. ("Cook").  See Sloane Decl. ¶ 14.

Worldwide has granted a license to Cook to use the mark INTERSEARCH in the U.S. for executive search services.  Sloane Decl. ¶ 14.   Worldwide identifies Cook as its U.S. location on its Internet web site at www.intersearch.org.  Sloane Decl. ¶ 15.  Worldwide further identifies New York as the second of its seven U.S. locations. Id.

Cook, in turn, presently holds itself out as the exclusive U.S. representative of Worldwide on its Internet web site at www.cookassociates.com.  Sloane Decl. ¶ 16.  Ms. Susan

Denison is the Managing Director of Cook's Executive Search division. Sloane Decl. ¶ 17. Ms. Denison is based out of Cook's Manhattan Office. Id. Cook has a presence in this District in Manhattan. Memo at p. 3.

On September 21, 2007, Plaintiff filed its First Amended Complaint in the New York Action to add Cook Associates, Inc. ("Cook") as a co-defendant. Dkt. 7, ¶ 3. The Amended Complaint also seeks monetary damages and injunctive relief preventing Worldwide and Cook from using the mark INTERSEARCH in the U.S.

## ARGUMENT

I. **DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED BECAUSE THEY ARE SUBJECT TO PERSONAL JURISDICTION IN NEW YORK**

At this juncture, to defeat a challenge to personal jurisdiction, Plaintiff need only make a *prima facie* showing of jurisdiction. Albert Furst Von Thurn Und Taxis v. Karl Prince Von Thurn Und Taxis, 2006 U.S. Dist. LEXIS 56703, at * 21-22 (S.D.N.Y. 2006) (DAB). While Plaintiff ultimately bears the burden of establishing the existence of jurisdiction over defendants by a preponderance of the evidence, the burden should not be imposed on the plaintiff at the pleading stage. Hubbell Inc. v. Pass & Seymour, 883 F. Supp. 955, 962 (S.D.N.Y. 1995). Thus, when determining if Plaintiff has made the proper showing, all allegations must be construed in the light most favorable to Plaintiff. PDK Labs v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997).

A. **Defendants Transact Business in New York Pursuant to N.Y. C.P.L.R. Section 302(a)(1)**

Plaintiff alleges that Defendants have transacted business in New York. Sloane Decl. ¶ 19, Ex. I ¶ 4. Section 302(a)(1) confers jurisdiction upon a defendant who has contracted anywhere to supply goods or services within New York. N.Y. C.P.L.R. § 302(a)(1). A

defendant is subject to personal jurisdiction in New York if it purposefully avails itself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws. Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 564 (S.D.N.Y. 2000). A single transaction of business is sufficient to give rise to jurisdiction under New York Civil Practice Law and Rules Section 302(a)(1), even where the defendant never enters the state, if the claim arises out of the transaction. PDK Labs, 103 F.3d at 1109.

Worldwide should be estopped from denying that it does business in New York. It boasts about its reach into New York on its Internet web site at www.intersearch.org, by transacting business with Conex in New York and by including Cook and Cook's New York address as one of its business locations. Sloane Decl. ¶ 15.

Cook, in turn, admits on its own Internet web site at www.cookassociates.com that it "serves as the exclusive U.S. partner for [Worldwide]." Sloane Decl. ¶ 16. Cook, as the exclusive licensee, is acting on Worldwide's behalf in the U.S., including in New York. See Firma Melodiya v. ZYX Music GMBH, 1995 U.S. Dist. LEXIS 795, at *6 (S.D.N.Y.1995) (stating that Defendant licensee appeared to be acting as foreign licensor's agent pursuant to a contract that allowed the licensee to exploit the subject intellectual property "in the United States").

In its Amended Complaint, Plaintiff alleges that Worldwide's license with Cook relates to Cook's use of the mark INTERSEARCH in the U.S. for executive services and human resource consulting. Sloane Decl. ¶ 19, Ex. I ¶ 57. By entering into the license agreement with Cook, who is undeniably present in New York, Worldwide purposefully availed itself to the laws and protections of New York State. Firma Melodiya, 1995 U.S. Dist. LEXIS 795, at *8-9 (holding that the defendant purposefully availed itself to the benefits of doing business in New York by entering into a contract that contemplated the sale of allegedly infringing products in

New York).

It is undisputed that Cook has a New York office and is subject to personal jurisdiction in this State. Memo at p. 3. Worldwide is similarly subject to personal jurisdiction in New York based upon the contacts with and conduct of its exclusive licensee, Cook. See Sloane Decl. ¶ 19 Ex. I ¶. A licensor of a trademark which is exploited by a licensee within New York is subject to personal jurisdiction in an action involving the licensed trademark. Firma Melodiya, 1995 U.S. Dist. LEXIS 795, at *8-9 (S.D.N.Y.1995); Citigroup, 97 F. Supp. 2d at 566 (exercising jurisdiction over a defendant licensor where its licensee infringed on plaintiff's trademark in New York).

Additionally, Worldwide was undoubtedly aware that Cook would use the mark INTERSEARCH in New York, especially because Cook maintains an office in this State and in this District, an office that Worldwide itself lists on its very own web site. Citigroup, 97 F. Supp. 2d at 566 (indicating that the licensor is subject to personal jurisdiction where it can foresee use of the trademark in New York); see also Firma Melodiya, 1995 U.S. Dist. LEXIS 795, at *8-9 (finding that, although the license agreement did not specifically reference New York, defendants must have contemplated marketing the infringing goods in New York).

Through its exclusive licensee, Worldwide transacts business in New York because Cook uses the mark INTERSEARCH in New York. Furthermore, the instant action arises out of that business activity because Plaintiff has filed an affirmative trademark infringement action, in addition to its declaratory judgment claims, based on Defendants' unauthorized use of Plaintiff's name and mark INTERSEARCH. See Sunward Electronics, Inc. v. McDonald, 362 F.3d 17, 23-24 (2d. Cir. 2004) (holding that the plaintiff's infringement claims arose from Defendant's business activities related to the use of the subject trademark).

Defendants' reliance on Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181 (2d Cir.

1998) is misplaced. The Court in <u>Jazini</u> analyzed the sufficiency of the plaintiff's allegations under the "doing business" test of Section 301 of the New York Civil Practice Law and Rules. <u>Id.</u> at 184. There, the court determined that the plaintiff did not properly allege the foreign defendant's "presence" in New York. <u>Id.</u> at 185. Here, however, Plaintiff is not alleging that Worldwide has such continuous and systematic contacts with New York that it can be sued for activities unrelated to its contacts with the State. Plaintiff is merely alleging that Worldwide is subject to personal jurisdiction because it transacts business in New York related to the use of Plaintiff's name and mark pursuant to Section 302(a)(1) of New York Civil Practice Law and Rules. Sloane Decl. ¶ 19, Ex. I ¶ 4.

Defendants argue that the initial Complaint for declaratory judgment filed by Plaintiff lacked any specific allegations of any New York activities by Worldwide. Memo at 7. Notice pleading did not require Plaintiff to allege its claims with any great specificity. <u>Century 21, Inc. v. Diamond State Ins. Co.</u>, 442 F.3d 79, 83 (2d Cir. 2006) ("The simplified pleading standard of Rule 8 of the Federal Rules of Civil Procedure requires only a short and plain statement of the claim showing that the pleader is entitled to relief."). Moreover, the original Complaint has been superseded by Plaintiff's Amended Complaint. <u>See</u> <u>Dluhos v. The Floating and Abandoned Vessel</u>, 162 F. 3d 63, 68 (2d Cir. 1998). To the degree that Defendants argue that the Amended Complaint is still lacking in detail, Plaintiff requests leave to file a further Amended Complaint.

**B. Defendants Have Committed A Tortious Act within New York as Defined by N.Y. C.P.L.R. 302(a)(2)**

Plaintiff's Amended Complaint includes claims that Defendants have infringed Plaintiff's name and mark INTERSEARCH. <u>See</u> Sloane Decl. ¶ 19, Ex. I ¶¶ 58-87. A foreign defendant will be subject to jurisdiction in New York State if it commits a tortious act within the

state and the cause of action arises from that act.  See N.Y. C.P.L.R. 302(a)(2).  "Trademark infringement occurs where the attempted passing off of an infringing mark occurs."  Citigroup, 97 F. Supp. 2d at 567.

In this case, Worldwide is infringing on Plaintiff's name and mark INTERSEARCH in New York by offering services in the State through its exclusive licensee Cook.  See Foot Locker Retail, Inc. v. SBH, Inc., 2005 U.S. Dist. LEXIS 599, at *12 (S.D.N.Y. 2005) (DAB) (finding that the defendant's licensing of a trademark to a New York competitor of the plaintiff's would likely harm the plaintiff in New York by confusing potential New York customers).  There is no minimum threshold of activity required to subject a defendant to personal jurisdiction under this Section.  Id.  Offering one copy of an infringing work for sale in New York constitutes commission of a tortious act within the state sufficient to confer personal jurisdiction over the infringers.  Hubbell, 883 F. Supp. at 961 (holding that allegations that the defendant has begun or was about to begin selling an infringing product was sufficient to make a prima facie showing of personal jurisdiction).

Indeed, the business that Worldwide conducts through Cook in New York is not even Worldwide's first such contact with New York.  According to Defendants, Worldwide, through its licensees, has used the mark INTERSEARCH since at least as early as 1989.  Memo at p. 5.  Defendants evidently refer to the activities of Conex, Worldwide's former licensee, a company located on Madison Avenue in Manhattan in this District, since Conex was apparently Worldwide's only licensee in the U.S. prior to Cook.  Conex presumably used the licensed mark INTERSEARCH in New York, where it has been located at all relevant times.[1]    At the very

---

[1]  The fact that any written agreement between Worldwide and Conex may have stated that it was to be governed by the laws of the U.K. and required disputes to be resolved in the U.K, and was not drafted or negotiated in New York, as alleged by Defendants (Memo at. p. 5) is of no moment.  Aside from the fact that Plaintiff was not a party to that agreement and Conex is not a party to the instant action, the only issue for jurisdictional purposes is whether Worldwide, through its former licensee Conex, and current licensee Cook, has commercialized the mark INTERSEARCH in the U.S. and in this District.  Indeed. That Worldwide never had an office, employees, phone

least, Worldwide must have contemplated that Conex would use the licensed mark here.  See Firma Melodiya, 1995 U.S. Dist. LEXIS 795, at *8-9 (finding that, although the license agreement did not specifically reference New York, defendants must have contemplated marketing the infringing goods in New York).  Thus, Worldwide cannot viably plead in this Court in good faith that it is not subject to the jurisdiction in this District.

**C.    If the Court Declines to Exercise Personal Jurisdiction on the Above Facts, It Should Grant Discovery on the Issue of Personal Jurisdiction**

Should the Court find Plaintiff has made a less then a *prima facie* showing of personal jurisdiction over Defendants, Plaintiff respectfully requests the opportunity to take limited jurisdictional discovery. In re Magnetic Audiotape, 334 F.3d 204, 207-08 (2d Cir. 2003) (reversing the district court's denial of plaintiff's request to engage in limited jurisdictional discovery); Marine Midland Bank v. Miller, 664 F.2d 899, 904 (2d Cir. 1981) ("In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway. . . . it may permit discovery in aid of the motion.").

If granted, Plaintiff has little doubt that it will be able to confirm numerous contacts between Defendants and New York.  As for Cook, such discovery would simply establish what its advertising and what Worldwide's advertising already claim - - that Cook

---

numbers, bank accounts or other property in New York (Memo at p. 5) is to be expected.  By licensing a New York company to commercialize the mark INTERSEARCH in the U.S., Worldwide avoided the expense of setting up shop here.  Similarly, the fact that the agreement between Plaintiff and third party Conex is governed by California law (Memo at p. 6) has no bearing over when this Court has jurisdiction over Defendants Worldwide and Cook. Any release granted by Plaintiff to third party Conex (Memo at p. 6) does not extinguish the fact that Worldwide previously granted a license to use the mark INTERSEARCH to a company based here in New York. Defendants rely on Smith v. Lincoln to support its proposition that a release of an agent acts as a release of the principal.  Memo at p. 12.  This one page New York State Supreme Court decision from the year 1966 is hardly persuasive support. Furthermore, even if Smith is seen as somewhat persuasive, in this case, Worldwide continued its infringing conduct after any alleged release through Conex.

offers executive recruiting through its New York location.[2]  A short deposition of Susan Denison, the Cook officer located in New York who manages the executive recruiting services of the company, or other knowledgeable officers of Cook should suffice to establish that Cook uses the mark INTERSEARCH here.[3]  As for Conex, and by implication its licensor Worldwide, such discovery would demonstrate that it previously offered executive recruiting services under the mark INTERSEARCH in this District where it has been located.

## II.    DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED BECAUSE PLAINTIFF'S COMPLAINT DOES NOT FALL WITHIN EITHER NOMINATED EXCEPTION TO THE FIRST-TO-FILE RULE

Plaintiff was the first to file its action concerning rights in the trademark INTESEARCH, about four months before Worldwide filed a competing action in California.  As a result, Plaintiff is entitled to the benefit of the long-established and well-respected first to file rule.  Contrary to Defendants' position (See Memo. at 14), this is particularly true in the Second Circuit, where there is a strong presumption in favor of first-filed declaratory judgment suits over later-filed infringement actions.  See City of New York v. Exxon Corp., 932 F.2d 1020, 1025 (2d Cir. 1991); 1-800-Flowers Inc. v. Intercontinental Florist, 860 F. Supp. 128, 131 (S.D.N.Y. 1994).

Worldwide had threatened Plaintiff with claims of infringement and made initial efforts to challenge Plaintiff's application to register the mark INTERSEARCH.  O'Donnell

---

[2]  Plaintiff does not dispute that maintaining web sites accessible in a form does not establish sufficient contacts with the forum to create personal jurisdiction. Memo at p. 13, citing, Panavision Intern, L.P. v. Toeppen,, 141 F.3d 1316, 1319 (9th Cir. 1998). However, when a web site states that a company is doing business in New York, as shown in the printouts from the web sites of Worldwide and Cook, attached as exhibits to Plaintiff's First amended Complaint, it is obvious that the owner of the web site is doing business here. Albert Furst Von Thurn Und Taxis v. Karl Prince Von Thurn Und Taxis, 2006 U.S. Dist. LEXIS 56703, at * 26 (S.D.N.Y. 2006) (DAB) (finding that defendant's declaration that it was not affiliated with the other corporate defendants was contradicted by statements on its own web site).

[3] Conspicuously absent from the papers in support of Defendants' motion to dismiss is any declaration from anyone from Cook. Plaintiff should be afforded the opportunity to depose Cook to learn about its New York office's use of the mark INTERSEARCH based on its license with Worldwide.

Decl ¶ 19. There is no requirement that a business threatened with an infringement lawsuit wait to be served. <u>Supreme International Corp. v. Anheuser-Busch, Inc.</u>, 972 F. Supp 604 (S.D. Fla, 1997). Worldwide endeavors to override this well-established rule, arguing that Plaintiff's filing falls under both the "Anticipatory filing" and "customer suit" exceptions. As is set forth below, neither of Defendants' arguments merit quarter.

### A.    Plaintiff's Complaint Does Not Fall Within The Anticipatory Filing Exception to the First-to-File Rule

The core of an anticipatory filing is that it seeks to prejudice a defendant by unfairly securing the Plaintiff's home forum as the locus of the action with foreknowledge or expectation of the commencement of an analogous action on the part of the Defendant. <u>See</u>, <u>e.g.</u>, <u>Gianni Sport Ltd. v. Metallica</u>, 00 Civ. 0977 (MBM) 2000 U.S. Dist. LEXIS 17339 (S.D.N.Y. December 4, 2000). This action does not fit squarely within the rule. Although Plaintiff has an office in this District, New York is not its home forum. Plaintiff's headquarters are located on the opposite coast in San Francisco. O'Donnell Decl. ¶ 5.

This distinction is critical and takes Plaintiff out of the anticipatory filing exception. Plaintiff is not forcing Defendants to litigate this case in Plaintiff's home forum in California. Indeed, Plaintiff intentionally chose not to file the instant action in California, in part, due to concern that Defendants, with a presence in New York and located in the United Kingdom, would challenge personal jurisdiction on the West Coast. <u>See</u> <u>Woodke v. Dahm</u>, 70 F.3d 983, 985 (8th Cir. 1995) (affirming the district court's dismissal of a trademark infringement action because plaintiff improperly brought the action in its home forum). Plaintiff filed the instant action in this Court because all the parties are subject to jurisdiction here and, as discussed <u>infra</u>, New York is the most convenient forum. <u>Id.</u>

As is discussed <u>supra</u>, there is little doubt that this Court has personal jurisdiction

over Worldwide and Plaintiff – as well as subpoena power over Conex. New York is also the most convenient forum to those concerned. As between Worldwide in the U.K. and Plaintiff in California, New York lies equidistant between the two. This District is also among the geographically closest to the U.K., commonly serves as the forum for disputes involving European entities, and, as is plainly demonstrated by the photographic evidence in Exhibit H attached to the Sloane Declaration, Worldwide, is no stranger to Manhattan. Sloane Decl. ¶ 18. The fact that Plaintiff has an office here (O'Donnell Decl. ¶ 6) also makes it a particularly convenient forum for Plaintiff to litigate its trademark claims. Testimony from third party witness Conex, the former licensee of Worldwide, will also no doubt be required in this case. Sloane Decl. ¶ 4. The fact that Conex is located in Manhattan (Sloane Decl. ¶ 4) further reinforces the convenience of this District to all concerned.

Simply put, when Plaintiff filed the instant action, this forum represented the most convenient location for all parties and witnesses in the aggregate. Defendants have not alleged that Second Circuit law would somehow be more favorable to Plaintiff. Defendants set forth no reasonable motivation for Plaintiff's alleged forum-shopping, the core element of anticipatory filing and, thus, the New York Action should not be so characterized. In fact, given the above convenience circumstances and the fact that the New York Action is first filed, it is apparent that it is Defendants who are forum shopping. By the same token, it is unclear why Defendants are pushing for this case to be tried in California, where neither has any office or otherwise has any commercial presence. It is unclear that the Court in California would even find personal jurisdiction over Defendants merely by virtue of the fact that Plaintiff has its headquarters there.

Defendants state that they offered Plaintiff an opportunity to voluntarily transfer the case to California. Memo at pp. 8 and 9. The case law cited by counsel for Worldwide, Fort Knox Music v. Baptiste, 139 F. Supp. 2d 505 (S.D.N.Y. 2001), is not compelling. The defendant

in the <u>Fort Knox</u> case had no presence in New York or any agent in New York. The same cannot be said for Worldwide. Counsel for Plaintiff responded as such. No reply was ever received from counsel for Worldwide.

Indeed, it is disingenuous for Defendants to argue that judicial economy favors the California Action. Memo at p. 14. If Defendants were at all concerned with judicial economy, or issues of comity for that matter, they should have moved to dismiss the New York Action before taking the time and expense to file a second competing action in California.[4]

**B.    Plaintiff's Complaint Does Not Fall Within The Customer Suit Exception to the First-to-File Rule**

Defendants speculate that Plaintiff's Amended Complaint added Cook as an attempt to gain personal jurisdiction over Worldwide and thus perfect its alleged forum-shopping plan. Memo. at p.16. To the contrary, Plaintiff added Cook because Plaintiff learned that Cook had received an exclusive license from Worldwide to use the mark INTERSEARCH in the U.S., (Sloane Decl. ¶ 14) and any such use infringes on Plaintiff's trademark rights. Plaintiff added Cook, in part, to provide complete relief to Plaintiff's trademark rights when a final declaration of rights is determined. The fact that Cook has an office in New York and apparently does business in connection with the mark INTERSEARCH out of that location only reinforces the jurisdiction of this Court.

Aside from their conclusory misrepresentations that Cook was improperly added, Defendants label Plaintiff's Amended Complaint as one with "customer-type claims," and thus,

---

[4] Defendants state that they filed the California Action without knowledge that Plaintiff had served the declaratory judgment complaint in the New York Action. Memo at. P. 3. However, two and a half months earlier, counsel for Worldwide declined to accept service of the complaint. Memo at p. 8. Worldwide knew that Plaintiff would have no choice but to effect service under the Hague Convention prior to the 120-service deadline. Service in the U.K. could hardly have come as a surprise. Furthermore, the argument that all of the parties' claims cannot be resolved in New York is a non-starter. Memo at p. 16. The California Action includes various state and common law claims under California law state that no doubt have equivalent under New York state law.

an exception to the first-filed rule.[5]  Memo. at p. 15.  Defendants misapprehend the parameters of the customer action exception.  A 'customer action' [is] where the first-filed suit is against a customer of the alleged infringer while the second suit is against the infringer itself" in a different district.  Aerotel, Ltd v. Sprint Corp., 100 F. Supp. 2d 189, 195 n.7 (S.D.N.Y. 2000).  Here, Plaintiffs filed against Worldwide in its original Complaint and subsequently added Cook, i.e. the alleged customer, in the Amended Complaint in the same district.  Plaintiff had previously instituted an action and properly alleged personal jurisdiction over Worldwide well prior to Plaintiff's amendment to add Cook as a party.  Such a scenario does not even remotely implicate the customer suit exception.  Id. (explaining that Plaintiff's "first action was against [the alleged infringer].  Because [the customer of the alleged infringer] . . . was only added as a defendant in the Amended Complaint, this exception [to the first-filed rule] does not apply").

Defendants' erroneously promote the "real" dispute as between only Plaintiff and Worldwide.  Memo at 16.  When it became clear that Plaintiff and Worldwide were unable to settle their dispute, and Worldwide intended to use the mark INTERSEARCH through Cook, Plaintiff was entitled to amend its original Complaint and add the intended user of the mark in the U.S. as a party to this action.  Moreover, instead of just seeking declaratory relief from the Court, since Worldwide had not withdrawn its allegations of infringement, Plaintiff decided to seek monetary damages and injunctive relief from the Court.  Sloane Decl. ¶ 19.  As a result, the Amended Complaint seeks more than just a declaration of ownership as between Plaintiff and Worldwide.  As the intended licensee of the mark in dispute, Cook is hardly an innocent bystander in this action.

---

[5] Defendants' contentions that Plaintiff's Amended Complaint should not be considered as first filed because it was filed after Intersearch Worldwide filed its complaint in the California Action are incorrect. Memo. at p. 16. Plaintiff's Amended Complaint relates back to the date of its original Complaint, making it the first-filed and superceding pleading. See Aerotel, Ltd v. Sprint Corp., 100 F. Supp. 2d 189, 195-96 (S.D.N.Y. 2000) (explaining that Plaintiff's amended complaint related back to its original complaint, and thus was still considered the first-filed).

Defendants assert that Plaintiff filed the original declaratory judgment action in New York while Plaintiff and Worldwide were discussing settlement. Memo at p. 15-16. However, those settlement discussions had failed over many months, and Plaintiff was increasingly apprehensive about its business plans under the mark in question, especially because Worldwide had signaled its intent to oppose registration of Plaintiff's trademark. O'Donnell Decl. ¶¶ 21-24. NSI Corp. v. Showco, Inc., 843 F. Supp. 642 (D. Or. 1994), a case from Oregon cited by Defendants (Memo at p. 15) is inapposite. In NSI, the plaintiff had admitted that it was the fear of suit in an inconvenient forum, and not defendant's delay in responding to a settlement offer, that prompted plaintiff to file its declaratory judgment suit. Here, it was not Plaintiff's fear of being sued in an inconvenient forum that drove it file the declaratory judgment suit, but rather the delay in achieving settlement and the continuing apprehension that Worldwide had not withdrawn its threats and intended to oppose Plaintiff's registration if not sue Plaintiff. O'Donnell Decl. ¶ 24. Both concerns were justified as the threats were ultimately realized.

Defendants fret that allowing this action to move forward will encourage trademark owners to file suit first, rather than to try to negotiate settlement. Memo at p. 15. But that is the risk that a trademark owner faces in sending a threatening cease and desist letter. Furthermore, just because a party initiates litigation does not mean that it cannot also simultaneously pursue settlement discussions in good faith. Plaintiff initially tried to settle the dispute with Worldwide and continued those settlement discussions long after filing the instant action. O'Donnell Decl. ¶ 27. Even to this day, Plaintiff has continued to reach out to Worldwide to try to settle their differences. O'Donnell Decl. ¶ 30. Unfortunately, it does not appear as though the parties have found common ground.

As the above indicates, Defendants' rationale for dismissal of this action must fail. They are left only with the similarly meritless fall back position of transfer based upon the

convenience of the parties.  However, as discussed *supra,* the convenience of the parties dictates maintenance of this suit in the Southern District of New York.

### III.    TRANSFER TO DEFENDANTS' CHOSEN FORUM IS BOTH INAPPROPRIATE AND UNAVAILABLE DUE TO DEFENDANTS' FAILURE TO COMPLY WITH THE ESTABLISHED PROCEDURES FOR SEEKING TRANSFER

Should the Court decline to dismiss this case, Defendants move, in the alternative, to transfer this action to the Northern District of California pursuant to 28 U.S.C. §1404(a). Memo. at p. 1.  That transfer is unwarranted and Defendants' request should be denied.

Transfer pursuant to Section 1404(a) centers around the convenience of the parties and witnesses. Am. Eagle Outfitters, Inc. v. Retail Royalty Co., 457 F. Supp. 2d 474, 477 (S.D.N.Y. 2006).  "A motion to transfer venue under Section 1404(a) must be accompanied by an affidavit containing detailed factual statements identifying the potential principal witnesses expected to be called and a general statement of the substance of their testimony . . . . Absent such a showing, the motion should be denied."  Id. at 478 (internal citations omitted). Defendants have failed to include such an affidavit with their motion that even remotely supplies this information.  Any such information submitted in a later reply brief is contrary to the notions of justice, as Plaintiff will not be afforded a full, fair, and just opportunity to respond.

Regardless of this deficiency, this District is convenient for the parties and witnesses, and should be accorded deference as Plaintiff's choice of forum.   Am. Eagle Outfitters, Inc., 457 F. Supp. 2d at 477; Coast to Coast Fabrics, Inc. v. Exact Change Only Corp., 2006 U.S. Dist. LEXIS 14950, *16 (S.D.N.Y. 2006) (DAB).

Defendants state that Plaintiff's only apparent connection to New York is its counsel located here.  Memo at pp. 2 and 5.  To the contrary, as stated supra, Plaintiff has an office in New York and customers located in New York. O'Donnell Decl. ¶¶ 5 and 8.  As a

result, New York represents a particularly convenient and proper venue for Plaintiff.

As discussed *supra,* this District is equally convenient for Worldwide. Indeed, Worldwide has failed to articulate why California, located even farther away from the U.K. than New York, is a more convenient forum. California is twice the distance from the U.K. as the U.K. is from New York.

As also discussed *supra,* this District is equally convenient to third party witness Conex as it is to Plaintiff. O'Donnell Decl. ¶ 10; Sloane Decl. ¶4. There is no need to force Conex, a company located in this District, to travel across the country to appear as a witness at trial. Defendants would have Conex do just that by transferring the case to California.

This jurisdiction is also just as convenient to Defendant Cook. The reasons why this jurisdiction is convenient to Cook are the same as those that underlie a finding of personal jurisdiction here, namely, Cook has an office here and its. Its officer in charge of the business associated with the mark is located here. Sloane Decl. ¶17 Cook should not claim that New York is an inconvenient forum.

Despite their lengthy submissions, Defendants never claim that they would be inconvenienced by litigating in New York as opposed to California or that they would be prejudiced by litigating in this Court. To the contrary, for reasons still unknown, Defendants basically argue that Plaintiff's chosen forum of New York is inappropriate because litigating in California would be more convenient to Plaintiff (because its corporate headquarters is located there) as opposed to the Defendants (who have no presence in California whatsoever). Memo at p. 16. See also Coast to Coast Fabrics, Inc., 2006 U.S. Dist. LEXIS 14950, *14 (explaining that "one party's residence in a chosen forum, without more connecting a case to that forum, is insufficient to keep a case in that forum). Respectfully, Plaintiff submits that it is in a much better position then Defendants to evaluate and manage its own convenience in this action.

Defendants' claim that California has a more substantial claim to this dispute than New York is also fallacious. Memo at p. 17. Apart from the fact that Plaintiff has its main office in California, no other connections with that state relevant to the instant dispute have been established. The so-called "California Agreement" is merely a choice of law provision between Plaintiff and third party Conex. Memo at p. 6. It is simply irrelevant to determining the best forum for this action. Furthermore, Defendants' allegation that California has more of a "substantial connection" to this trademark dispute (Memo at p. 17) demonstrates a fundamental misappreciation of Plaintiff's business. Some of Plaintiff's most well-known financial clients are located in New York. O'Donnell Decl. ¶ 8.

In sum, Defendants have failed to submit the required evidentiary showing and have otherwise not adequately provided the Court with any compelling reasons why the instant action should be transferred. Defendants' motion should therefore be denied accordingly.


## IV.    CONCLUSION

For at least the reasons set forth above, the instant motion should be denied in its entirety.[6] To the extent that the Court finds that Plaintiff has failed to plead jurisdiction with sufficient specificity in its Amended Complaint, Plaintiff respectfully requests leave to replead. To the degree that the Court finds that the jurisdictional requirement has not as of yet been met, Plaintiffs requests a short jurisdictional discovery period.

---

[6] Defendants' go so far as to petition this Court to sanction Plaintiff alleging that this is an exceptional case. The sole presiding premise underlying Defendants' sanctions argument, however, is that Plaintiff apparently declined to acquiesce to Defendants' chosen forum. This is by no means an exceptional case and Plaintiffs should not be sanctioned for selecting a forum that is the most convenient to all parties, especially when the Defendants have not alleged, much less shown, any prejudice associated with litigating in this District.

Respectfully submitted,

Dated:  October 22, 2007                OSTROLENK, FABER, GERB & SOFFEN, LLP
        New York, New York


_____s/Peter S. Sloane_____
Robert C. Faber (RF 7020)
Peter S. Sloane (PS 7204)

1180 Avenue of the America
New York, New York 10036
Telephone: (212) 382-0700
Facsimile:  (212) 382-0888
rfaber@ostrolenk.com
psloane@ostrolenk.com