Robert C. Faber (RF 7020)
Peter S. Sloane (PS 7204)
OSTROLENK, FABER, GERB & SOFFEN, LLP
1180 Avenue of the Americas
New York, New York 10036
Telephone: (212) 382-0700
Facsimile:  (212) 382-0888
rfaber@ostrolenk.com
psloane@ostrolenk.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| INTERSEARCH GROUP, INC.<br><br>                Plaintiff,<br><br>v.<br><br>INTERSEARCH WORLDWIDE LIMITED,<br>and COOK ASSOCIATES,<br><br>                Defendants, | Civil Action No.:  07 CV 3545<br>                 (DAB)(KNF) |

**DECLARATION OF DAN O'DONNELL IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DIMISS, OR IN THE ALTERNATIVE,**
**TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA**

Dan O'Donnell hereby declares as follows:

1.  I am the President, Chairman and Chief Executive Officer of InterSearch Group, Inc. ("InterSearch"), Plaintiff in the above-referenced civil action.

2.  I submit this Declaration in opposition to Defendants' Motion to Dismiss, or in the Alternative, to Transfer to the Northern District of California.

{00877904.1}

3. InterSearch is a U.S.-based company that provides leading Internet search services through a combination of traffic aggregation and proprietary web sites. The company operates in the fastest growing segments of Internet commerce, including paid search and direct navigation driving high quality traffic to advertisers and providing users with quick access to pertinent products and services. InterSearch maintains an Internet web site at www.intersearch.com, where we promote and advertise our search services. Printouts from the web site are attached as Exhibit A.

4. Through our InterSearch Corporate Services division, we also provide professional and technical consulting to large corporations, predominantly in the financial services market. We help our clients achieve higher efficiency and performance, as well as lower operating costs, by ensuring that they have the proper employees, technologies and processes. Among other things, we provide rigorous employment screening searches for our clients. Candidates selected by us are of high quality for the proposed employment with specialized backgrounds and confirmed credentials. We actively promote our employment-related services through our Corporate Services business and its Internet web site located at www.corp.intersearch.com. Printouts from the web site are attached as Exhibit B.

5. InterSearch is headquartered in San Francisco. However, we have a second office located in New York. San Francisco and New York are the only two locations where we have offices.

6. Our New York office is located at 14 Wall Street in Manhattan. It is prominently listed on our Internet web site. A printout is attached as Exhibit C. The New York office is extremely important to the identity of InterSearch.

7. New York is a critical market for InterSearch and its InterSearch Corporate Services

division. As a company that assists clients in the financial services industry, New York is naturally a leading market for our consulting and recruiting services.

8. Indeed, InterSearch services numerous well-known clients located in New York and neighboring counties, including ADP, HSBC, Merrill Lynch and Nomura Securities. Other New York-based clients include M&T, Pica 9, Stone Harbor, John A. Levin and InteriData. InterSearch worked with InteriData to place candidates at the insurance firm AIG.

9. InterSearch currently posts many listings for positions located in New York on its job bank located on its Internet web site. A printout is attached as Exhibit D.

10. InterSearch has operated under the name and mark INTERSEARCH without incident for many years. In a March of 2005, however, we received a "cease and desist letter" from a company named Conex Incorporated ("Conex"), having a place of business on Madison Avenue in Manhattan. A copy of the letter is attached as Exhibit E. In the letter, Conex alleged that we infringed Conex' trademark rights in U.S. Registration Nos. 1,125,849, 2,531,787 and 2,346,993 for the mark INTERSEARCH for executive search and human resource services (hereinafter collectively referred to as the "Registrations").

11. Following our receipt of the cease and desist letter, InterSearch and Conex discussed their dispute. After brief negotiations, we purchased Conex' rights to the mark INTERSEARCH.

12. In settlement of the dispute, InterSearch and Conex executed a Settlement Agreement in August of 2005 (the "Settlement Agreement"). A copy of the Agreement is attached as Exhibit F.

13. Under the Settlement Agreement, Conex represented that it was the sole owner of all right, title and interest in and to the trademark INTERSEARCH in the Registrations. Conex also

agreed to transfer the mark and Registrations to InterSearch Group. Transfer was accomplished by execution of the Deed of Assignment attached as an exhibit to the Settlement Agreement.

14.   As part of the Settlement Agreement, Conex also warranted that it was fully entitled and duly authorized to complete its obligations under the settlement, among which were an obligation of Conex to execute the assignment of the Registrations to InterSearch. At no time during its dealings with InterSearch did Conex ever inform us of any limitation on its right to transfer its registered mark INTERSEARCH and the Registrations, any agreements affecting the mark or Registrations, or any claim of right by any third party in or to the mark or Registrations.

15.   Intersearch promptly recorded the Deed of Assignment with the United States Patent and Trademark and Office ("U.S.P.T.O."). A printout from the online records of the U.S.P.T.O. reflecting the recordation of the assignment is attached as Exhibit G.

16.   Since resolving the dispute with Conex, we have continued to achieve great success under the name and mark INTERSEARCH. In 2006, we had revenue exceeding $25 million under that name and mark.

17.   InterSearch is now a publicly traded company with its shares listed on the American Stock Exchange ("AMEX") under the ticker symbol IGO. A printout from the Internet web site of the AMEX is attached as Exhibit H.

18.   Over the past two years, since settling the dispute with Conex and acquiring the trademark Registrations, InterSearch has continued to spend a substantial amount of time and resources in promoting its business under the name and mark INTERSEARCH.

19.   In December of 2006, we received an objection letter from a company named InterSearch Worldwide Limited ("Worldwide"), one of the two Defendants in this action. Worldwide

demanded, among other things, that we cease using our mark INTERSEARCH for our employment related services. A copy of the letter is attached as Exhibit I. The letter stated, in part, that "[i]f we are unable to reach an amicable resolution, please take note that our client will oppose your pending Application No. 76/658,774, and will be forced to take further legal action to enforce its rights."

20. In response to the objection letter, we had out outside attorneys correspond with the attorneys for Worldwide to explain our position regarding our prior rights as a bona fide purchaser and long time user of the name and mark INTERSEARCH for employment related services in the U.S.

21. On January 23, 2007, however, Worldwide ratcheted up the dispute by filing a request to extend its time to oppose our more recently filed application to register our mark INTERSEARCH (the "Application") in the U.S.P.T.O.

22. In March of 2007, the attorneys for Worldwide sent a further letter to our attorneys continuing to argue their meritless position. The letter concluded by stating "[g]iven the significant nature of the U.S. market, our client must be free to continue using its mark seamlessly throughout the world, including the U.S. Our client will therefore take whatever steps are necessary to secure its mark in the United States."

23. Despite the forceful tone of the letter, we had out attorneys discuss the possibility of settlement. Unfortunately, settlement discussions held the following month in April were unsuccessful in resolving the dispute.

24. In May of 2007, because Worldwide was continuing to assert its trademark rights against us, and with the dispute still unresolved, in order to try to remove the cloud handing over the title to our company name and mark, we had our attorneys file the instant civil action seeking judicial

assistance in declaring our right to use our name and mark INTERSEARCH for employment related services free from any interference by Worldwide.

25. We chose to file the lawsuit in New York, in part, because we have an office there and we thought that it would be the most convenient forum for the parties to litigate their dispute. Since our assignor of the trademark and Registrations of INTERSEARCH, who is also Worldwide's former licensee, Conex, was located in New York, we did not think that Worldwide would protest jurisdiction.

26. We were concerned that filing a civil action in California would prompt Worldwide, which is not a United States corporation, to object that the court there had no jurisdiction over it. We had no reason at the time to believe that Worldwide had any offices or other business dealings in California.

27. Despite filing the lawsuit, we continued in our good faith efforts to try to settle the dispute with Worldwide. Consequently, we had our attorneys refrain from serving Worldwide with the Complaint. Settlement would lead to quicker resolution of the dispute than a litigation. If the case settled, there would have been no need to incur the time and expense to serve Worldwide in the United Kingdom with the Complaint.

28. We kept in touch with our attorneys throughout the summer on the status of settlement discussions between the parties. Unfortunately, with the summer holidays, it was not possible to schedule a meeting or telephone conference between the parties. As I understand it, the fact that Worldwide is run by a Board of Directors, where each member is involved in the decision making process, aggravated the ability of Worldwide to coordinate a settlement conference.

29. It became apparent that Worldwide had no intention of settling this dispute.

Furthermore, Worldwide had licensed a company named Cook Associates, Inc. ("Cook"), a company with offices in New York, to act as licensee in place of Conex in the U.S. We amended our initial Complaint to add Cook as a defendant and to seek injunctive relief and monetary damages for infringement of our earlier rights to the name and mark INTERSEARCH in the U.S.

30. Notwithstanding amending our Complaint, and despite the fact that Worldwide has since filed a competing civil action in California, we have still encouraged our attorneys to try to settle the dispute with Worldwide. However, our last settlement offer was rejected by Worldwide and there has been no counteroffer.

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: October 22, 2007
San Francisco, California

*Daniel O'Donnell*
Daniel O'Donnell